Randall *v.* Snyder.

New trial granted.

---

CHARLES M. RANDALL, Respondent, *v.* ALMON B. SNYDER, Appellant.

(GENERAL TERM, EIGHTH DISTRICT, SEPTEMBER, 1869.)

Defendant was president of an incorporated company, known as the T. O. and M. Company, and intending and being empowered to bind the company thereby, made a note, running as follows: "I promise to pay, as president of the T. O. and M. Co., &c.," signed his name, adding "President of the T. O. and M. Co.," and for value received delivered it to plaintiff; the plaintiff knew of the defendant's agency, and, that in making the note, he intended to charge only the company.—*Held,* an action, seeking to charge defendant personally on the note, could not be sustained.

Where an agent of a corporation contracts on its behalf, making no representation as to the power of the corporation, he is not personally bound by the contract, if it turns out it was *ultra vires* as to the corporation.

THIS action was brought before a justice of the peace, on a promissory note, made and delivered by the defendant to the plaintiff, in the following terms:

"$137.75. For value received, I promise to pay, as president of the Transit Oil and Mining Company, one hundred and thirty-seven, and seventy-five one-hundredths dollars, to Charles Randall.

Dated, *November* 16, 1866.

A. B. SNYDER,
*President of the Transit Oil and Mining Co.*

Judgment was rendered for the plaintiff, and there was a

Randall *v.* Snyder.

retria. on appeal to the Orleans County Court, when it appeared that the note was given upon a consideration, and under circumstances, as follows: The Transit Oil and Mining Company was indebted to one Stoddard, for his services, in a sum equal to the amount of the note; Stoddard owed the plaintiff for services; the latter sold his claim against Stoddard to the company, and the note was given therefor by the defendant, acting in the capacity of president of the company.

It was proved that the defendant was in fact president of the company, and that the plaintiff knew the fact. The evidence tended to show, also, that the company had authorized the transaction, and ratified it afterward. The cause was trie 1 upon the assumption, though there was no formal proof of the fact, that the Transit Oil and Mining Company was a dul r organized corporation, under the general laws of this State.

The county judge held, and charged the jury that the note was not the note of the Transit Oil and Mining Company, and that the company was not liable upon it; he also refused to charge, as requested by the defendant, that if the jury should find, that the corporation authorized the defendant to make an arrangement of the claim, and afterward approved the arrangement actually made, with full knowledge thereof, and both parties intended to bind the company only, the plaintiff could not recover.

The court refused, also, to direct a verdict for the defendant, upon the ground, that the transaction was with the company, and that the defendant was not bound by or liable on the note.

Proper exceptions were taken to the charge as made, and to the refusal to charge, as requested.

Defendant moved the County Court, on a bill of exceptions, for a new trial; the motion was denied. A judgment was entered on the verdict, and appeals were taken from the order denying a new trial, and from the judgment.

*George Bullard,* for the appellant.

*John H. White,* for the respondent.

Present—MARVIN, LAMONT and BARKER, JJ.

Randall *v.* Snyder.

By the Court—BARKER, J. In considering the question presented by this bill of exceptions, this court must regard the defendant as the duly authorized agent of the Transit Oil and Mining Company, fully empowered to buy the plaintiff's debt against Stoddard, and to make and deliver to him the company's note therefor, and that the plaintiff had, at the time he received the note, knowledge of such agency, and that the defendant did not intend to become personally liable on the note ; for the evidence tended to prove all these facts, and the learned county judge, in his charge and refusal to charge, held, as a question of law, that the defendant was personally liable on the note, and that it was not the note of the corporation, although all the foregoing facts were fully and satisfactorily established by the evidence. The court will also regard as proved, that the Transit Oil and Mining Company is a duly organized corporation, under the laws of the State of New York. The jury, by their verdict, have found that the note was unconditionally delivered to the plaintiff at the time mentioned in the proofs.

Then the first and most interesting legal proposition to be investigated is, has the defendant become personally liable to the plaintiff upon this contract. The defendant, in discharging his duty as agent, has, in my opinion, made the instrument the contract of his principal; and it is liable thereon as the party making the same; and the defendant, by the form of the contract and the mode of execution, has clearly and unmistakably indicated his own intention not to become liable thereon.

In respect to the liability of the principal on written contracts, the rule is this ; if the name of the principal and a relation of agency be stated in the writing, and the agent really be authorized, the principal is alone bound, unless the language express a clear intention to bind the agent personally ; or, in other words, a written contract not under seal is binding on the principal in whatever form made or executed, if the principal's name appear in it, and the intention to bind him be apparent. (*Stanton* v. *Camp*, 4 Barb., 274 ; *Bank of Genesee* v. *Patchin Bank*, 13 N. Y., 309 ; *Hicks* v. *Hinde*, 9 Barb.,

Randall *v.* Snyder.

528 ; Story·on Agency, § 154 ; 1 American Leading Cases, 579, 602 ; *The New England Marine Insurance Company* v. *De Wolf*, 8 Pickering, 56; *Rathbon* v. *Budlong*, 15 John, 1; *Bradlee* v. *Boston Glass Manufactory*, 16 Pickering, 347.)

In the last cited case it is said : " As the form of words in which contracts may be made and executed are almost infinitely various, the test question is whether the person signing professes and intends to bind himself, and adds the name of another to indicate the capacity or trust in which he acts or the person ·for whose account his promise is made ; or whether the words referring to a principal are intended to indicate, that he does a ministerial act in giving effect and authenticity to the act, promise and contract of another. Does the person signing apply the executing hand of another, or the promising and engaging mind of a contracting party."

Testing the liability of the defendant by this clear, distinct, and comprehensive rule, it is plain that he is not liable, and that it is the legal and binding, contract of his principal. He had a principal that could make just such a contract. He was fully empowered to act for the principal. He has in the body of the instrument inserted its full name, and used apt and proper words, to indicate that he was not promising for himself, but was doing a ministerial act for his principal. The written contract on its face, imports what the plaintiff understood to be its legal effect when he received it, as expressed in his own language as a witness on the trial, to wit : " I intended to take the obligation of the company, and I supposed this note was the obligation of the company. I knew there was such a company, and that the defendant was the president of the company. At that time, I did not suppose my claim was against him." In *Bank of Genesee* v. *Patchin Bank*, *supra*, the liability of the principal, and non-liability of the agent, is affirmed, in a case where the evidence and circumstances are less clear and satisfactory than in this. There the bill of exchange, upon which the Patchin Bank was sued, as endorser, and held liable, was made payable to the order of S. B. Stokes, cashier, and endorsed by him, in his name, with the

addition only of cashier. The name of the Patchin Bank no-
where appeared on the face of the paper, and of course it
could not import on its face, that Stokes was, in making the
endorsement, acting as the cashier of the Patchin Bank ; but
that he, in fact, acted as agent for the bank, duly authorized
to make the endorsement, was proved on the trial. The addi-
tion of cashier to his own individual name, was quite conclu-
sive that he designed to limit his own liability as endorser,which
he might do ; the court received it as sufficient evidence, that
he endorsed for his principal.

In *Rathbon* v. *Budlong* (*supra*) the action was upon a
note, in the following words :

" Ninety days after date, I promise to pay S. & J. L. Rath-
bon, or order, three hundred and two, ninety-two one-hun-
dredth dollars, value received, for the Susquehannah Cotton
and Woolen Manufacturing Company.

ALBANY, *June 24th*, 1815.

SAMUEL BUDLONG, *Agent.*"

The agent, Budlong, purchased goods for his principal, and
gave the note in payment, and they were simultaneous acts.
He was sued, as the maker of the note, and held not to be
liable thereon. This case has been regarded as authority in
this State, and never questioned, and is decisive of the one
before us. I will only cite one more similar case, and that is
from a tribunal, whose decisions are ever regarded as high
authority by this court. *The New England Marine Insur-
ance Company* v. *James De Wolf, Jr.* (8 Pickering, 56). The
action was on a guaranty, written on the back of a premium
note, in these words :

" BOSTON, *April 27th*, 1825.

By authority from J. De Wolf, Jr., I hereby guaranty the
payment of this note.

ISAAC CLAP."

The principal was held to be liable on this promise,
the agent's authority being established. PARKER, C. J.,
delivered the opinion of the court, and said, " with respect to
the form of the guaranty, we are of opinion, that the effect

of it must be determined by the intention with which it was made. If Clap had authority to make the guaranty for the defendant, and the words are such, as not clearly to bind himself alone, and it can be ascertained that he intended to act for De Wolf, the latter *is* bound."

Snyder declared that he promised only as the president of the company, whose agent he was, and from all the circumstances of the case, it is evident he acted only in that capacity.

It is not necessary here to refer to the cases cited by the counsel for the plaintiff. Upon examination, they will be found not to contravene any of the propositions above stated and approved.

They are cases chiefly where the agent had no constituent, that he could bind by a promise, or acted in excess of or without authority from the person for whom he assumed to act.

It is needless to remark, in concluding the consideration of this branch of the case, that the court has had in mind, that a different, more technical and unyielding rule applies, where the contract is under seal; for in such cases, to bind the principal, the promise must be in his name, and the agreement executed in his name.

It is urged by the counsel for the plaintiff, that the corporation had no power to buy this account from the plaintiff, and to give its note for the payment of the consideration money. If this be true, as a legal proposition, we cannot see how it will make the defendant liable on this note; for it is not claimed that he represented to the plaintiff, that the transaction of buying the account was within its corporate power.

If the corporation be sued on the note, it may make the question for the plaintiff to meet; but whichever way this be held, it still remains proper for the defendant to set up and rely upon the defence, which he has pleaded, and which the court holds to be sufficient to defeat a recovery.

The judgment appealed from, and the order denying a new trial, are both reversed, and a new trial is granted, with costs to abide the event.

Judgment and order reversed.